UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASON TRAVIS MONTER,

                    Plaintiff,

v.                                                                   1:18-CV-1457
                                                                       (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     BRANDI SMITH, ESQ.
  Counsel for Plaintiff                                 KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                DANIELLA CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II  DAVID MYERS, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

        The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 22.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.      RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1989. (T. 68.) He completed high school. (T. 183.) Generally, Plaintiff's alleged disability consists of: back impairments, osteoarthritis, and chronic pain syndrome. (T. 69.) His alleged disability onset date is November 15, 2015. (T. 68.) His date last insured is March 31, 2018. (T. 68.) His past relevant work consists of security guard and dairy department manager. (T. 18, 172.)

### B. Procedural History

On January 14, 2016, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 68.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 6, 2018, Plaintiff appeared before the ALJ, Brian Curley. (T. 25-67.) On March 12, 2018, ALJ Curley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-24.) On October 17, 2018, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-19.) First, the ALJ found Plaintiff met the insured status requirements through March 31, 2018 and Plaintiff had not engaged in substantial gainful activity since November 15, 2015. (T. 13.) Second, the ALJ found Plaintiff had the severe impairment of lumbar degenerative disc disease. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed

impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as denied in 20 C.F.R. §§ 404.1567(b) and 416.967(b); except:

> he can sit for up to 6 hours in an 8-hour workday; stand and walk for up to 6 hours in an 8-hour workday; occasionally climb ramps or stairs; occasionally balance, kneel, or crouch; never climb ropes, ladders, or scaffolds; never crawl; avoid concentrated exposure to unprotected heights; he requires a cane for prolonged ambulation.

(*Id.*)[1]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 1.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's cervical spine impairment.  (Dkt. No. 13 at 8-14.)  Second, and lastly, Plaintiff argues the ALJ failed to properly evaluate the opinion of a treating source.  (*Id*. at 14-18.) Plaintiff also filed a reply in which he relied on his original arguments.  (Dkt. No. 2.)

### B. Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly determined Plaintiff's neck impairment was not severe.  (Dkt. No. 18 at 11-20.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

3

Second, and lastly, Defendant argues the ALJ's physical RFC finding was supported by substantial evidence. (*Id*. at 20-28.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

4

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

5

### A. Cervical Spine Impairment

Plaintiff argues the ALJ erred in his evaluation of Plaintiff's cervical impairment at step two of the sequential process because the ALJ relied on his "lay interpretation" of medical imaging and "ignored" the opinion of Plaintiff's treating provider, Steven Barnes, D.O. (Dkt. No. 13 at 8-14.) Plaintiff argues the ALJ's error in evaluating Plaintiff's cervical impairment at step two led to an improper RFC determination. (*Id*.) For the reasons outlined below, the ALJ did not err in his step two determination and any error would be harmless because the ALJ thoroughly discussed Plaintiff's cervical spine impairment in the remainder of his decision.

At step two the ALJ must determine whether the plaintiff has a medically determinable impairment that is "severe," or a combination of impairments is "severe". 20 C.F.R. §§ 404.1520(c), 416.920(c)[2]. An impairment, or combination of impairments, is "severe" if it significantly limits the plaintiff's ability to perform basic work activities and meets the durational requirement. *Id*. §§ 404.1522, 416.922. To meet the durational requirement, plaintiff's impairment must be expected to result in death or it must have lasted, or must be expected to last, for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

A failure to classify an impairment as severe at step two may be harmless error where the ALJ identified other severe impairments, and therefore proceeded with the subsequent steps, and in those subsequent steps specifically considered the

---

[2]  Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

6

impairment. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *see also Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination). In addition, Plaintiff bears the burden at step two. *Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) ("Britt's argument is without merit because he did not furnish the ALJ with any medical evidence showing how these alleged impairments limited his ability to work.").

Here, contrary to Plaintiff's argument, the ALJ did not find his cervical impairment non-severe based on his lay interpretation of the evidence. The ALJ found Plaintiff's cervical impairment not severe because the impairment did not meet the 12 month durational requirement. (T. 14); *see* 20 C.F.R. §§ 404.1509, 416.909. In making his determination, the ALJ outlined medical evidence in the record indicating Plaintiff first suffered from his cervical impairment after a motor vehicle accident in August 2016. (T. 14, 318.) The ALJ noted an August 2016 MRI of his cervical spine; however, Plaintiff received no documented treatment for his cervical spine impairment after September 2016, other than updated imagining in March and August 2017. (T. 14, 505.) The ALJ concluded the record contained no documented evidence that Plaintiff's cervical symptoms continued into 2017 and no source provided functional limitations regarding Plaintiff's cervical impairment. (T. 14.)

Plaintiff asserts the ALJ's step two conclusion was based on "speculation." (Dkt. No. 13 at 9.) However, as outlined above, the ALJ cited specific evidence in the record to support his determination. Indeed, after September 2016 the record contains no treatment for any cervical spine impairment and no source provided specific functional

limitations concerning Plaintiff's cervical spine. Therefore, the ALJ's step two determination was not pure speculation and was supported by substantial evidence in the record.

Plaintiff asserts the ALJ should have developed the record regarding Plaintiff's treatment for his cervical spine impairment. (Dkt. No. 13 at 10.) Plaintiff asserts because his 2017 medical images listed referring sources Plaintiff was "clearly" still receiving treatment. (Dkt. No. 13 at 9-10.) Here, the ALJ fulfilled his duty to develop the record.

First, contrary to Plaintiff's assertion, there is no evidence additional records exist. The "theoretical possibility [of additional medical records] does not establish that the ALJ failed to develop a complete record." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Second, Plaintiff was represented by counsel since the filing of his applications and Plaintiff failed, despite ample opportunity, to provide any additional records. (T. 97, 125, 128.) Plaintiff's counsel did not inform the ALJ of outstanding evidence, did not provide additional evidence to the AC, and did not submit evidence to this court. *See Bushey v. Colvin*, 607 F. App'x 114, 115-116 (2d Cir. 2015) (ALJ not obligated to further develop record where plaintiff, who was represented by counsel, failed to pointed to any evidence not included in the record but could have influenced the decision, the plaintiff's counsel made insufficient efforts to incorporate earlier records, and there was nothing in the record that would have given the Commissioner reason to believe records were missing). Therefore, the ALJ was not required to further develop the record.

In addition, any error to find Plaintiff's cervical spine impairment severe at step two would be harmless because the ALJ considered the impairment in subsequent steps. *Reices-Colon*, 523 F. App'x at 798. In his step four analysis, the ALJ discussed Plaintiff's testimony regarding limitations due to pain in his neck and his recently prescribed cervical collar. (T. 15.) The ALJ discussed Plaintiff's 2016 motor vehicle accident and Plaintiff's subsequent cervical paraspinal stiffness and limited cervical range of motion. (T. 16.) And lastly the ALJ discussed the statements of Plaintiff's treating primary care physician, Dr. Barnes, who treated Plaintiff for his various impairments. (T. 17.) Plaintiff asserts the RFC failed to contain limitations with head movement or reaching due to his cervical impairment; however, Plaintiff only cites to his testimony regarding such limitations. (Dkt. No. 13 at 14.) The ALJ found Plaintiff's testimony regarding his limitations from symptoms not entirely consistent with the medical evidence and other evidence in the record. (T. 16.)

As outlined by the ALJ in his written decision at steps two and four, the record did not contain any treatment notations concerning Plaintiff's cervical impairment after September 2016 and no source provided functional limitations due to Plaintiff's cervical impairment. (T. 14-17.) Therefore, the ALJ considered Plaintiff's reported cervical impairments in his step four determination and any alleged error at step two was harmless.

**B.      Statement by Dr. Barnes**

On November 3, 2016 and again on January 22, 2018, Dr. Barnes wrote a letter in which he stated Plaintiff was "unable to work" and was "100% disabled." (T. 332, 522.) The ALJ afforded Dr. Barnes's opinions "little weight." (T. 17.) The ALJ reasoned

the opinions provided "limited insight into the specific functional limitations," and a finding of disability was "inconsistent with the objective findings" in the record. (*Id.*)

Plaintiff argues the ALJ failed to follow the treating physician rule in assigning weight to Dr. Barnes's opinions because the ALJ rejected the doctor's opinion based on a "gap in the record, without making any attempt to recontact" him for additional information. (Dkt. No. 13 at 14-17.) Plaintiff's argument fails.

As an initial matter, the opinion a plaintiff is "disabled" or "unable to work" is not controlling on an ALJ. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). The ALJ is "responsible for making the determination or decision about whether [a plaintiff] meet[s] the statutory definition of disability." *Id.* "Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation ... to explain why a treating physician's opinions are not being credited." *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999).

As stated in *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 77 (2d Cir. 2018):

> [u]nder the treating physician rule, the ALJ must generally defer to well-supported medical opinions of a claimant's treating physician. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). This rule does not apply, however, to administrative findings, which are "reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1527(d). As section 404.1527(d)(1) of the regulations provides, "[o]pinions on some issues ... are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." The regulation explains that the Commissioner is responsible for making a determination about whether a claimant "meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). *See* Social Security Ruling 96-5p, 61 Fed. Reg. 34471 (July 2, 1996) ("[S]ome issues are not medical issues regarding the nature and severity of an individual's

> impairment(s) but are administrative findings that are dispositive of a case. The following are examples of such issues: ... Whether an individual is 'disabled' under the Act."). A bald statement that a claimant is "disabled" represents an administrative finding, not a medical opinion.

Because Dr. Barnes's statements were administrative findings and not medical opinions, the ALJ was not obligated to assess the statements under the treating physician rule.

Here, the ALJ's decision provided reasons to enable Plaintiff to understand why he did not agree with Dr. Barnes's statements he was disabled. *Snell*, 177 F.3d at 134 ("Snell is not entitled to have Dr. Cooley's opinion on the ultimate question of disability be treated as controlling, but she is entitled to be told why the Commissioner has decided - as under appropriate circumstances is his right - to disagree with Dr. Cooley."). Although the ALJ did not expressly reject Dr. Barnes's opinions because they went to the ultimate issue of disability, the ALJ concluded the opinions failed to contain specific functional limitations and were inconsistent with objective findings in the record. (T. 17.) Overall, the ALJ was not obligated to credit the doctor's statements concerning Plaintiff's ultimate disability status and was only obligated to provide reasoning for his determination.

Further, the ALJ was not obligated to recontact Dr. Barnes. Here, as in *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018), Plaintiff argues the record was deficient because the ALJ discounted the opinion of a treating source, who opined plaintiff was "unable to work," causing gaps in the record. (*See* Dkt. No. 13 at 16.) The Court in *Morris* held that the duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with his or her own prior opinions and the rest of the record. *Morris*, 721 F.

App'x at 27.  Because it is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts within that record, so long as the record provides sufficient evidence for such a resolution, the ALJ is under no obligation to seek additional information from a medical provider to resolve discrepancies in that provider's findings.  *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012).  Therefore, the ALJ was not obligated to recontact Dr. Barnes.

Overall, the ALJ properly assessed the statements provided by Dr. Barnes.  The doctor's statements, that Plaintiff was "disabled" and "unable to work," were not opinions subject to the treating physician rule but administrative findings as to Plaintiff's ultimate disability status.  The ALJ assessed the statements provided by Dr. Barnes and provided reasons for not adopting the doctor's findings.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:       April 7, 2020

William B. Mitchell Carter
U.S. Magistrate Judge